WESTERN COAL & MINING COMPANY v. HARRISON.

Opinion delivered January 24, 1916.

MASTER AND SERVANT—INJURY TO SERVANT—STANDARD EQUIPMENT—ASSUMED RISK.—Plaintiff was injured by the falling of coal down a shaft in which he was working, where the coal was being taken from the same. *Held*, when the apparatus in use was standard equipment in coal mines, the falling of the coal was, under the facts, an incident to unloading the same, and the risk of injury, being an ordinary one, and understood by the plaintiff was assumed by him.

Appeal from Franklin Circuit Court, Ozark District; *James Cochran*, Judge; reversed.

STATEMENT BY THE COURT.

The plaintiff, Kelley Harrison, brought suit for damages for personal injury, alleged to have been caused through the negligence of the appellant company by being struck with coal falling down the main shaft of the mine from unloading the cars, because of the dumping blocks being too low.

It was also alleged that the defective condition of the blocks was known to the defendant and that its pit boss agreed to repair same.

The answer denied all the allegations of the complaint and plead contributory negligence and assumed risk as defenses.

It appears from the testimony that a piece of coal fell down the shaft and struck and injured appellee while he was at work at his accustomed duties. The testimony shows that he had been at work about a week at the sump

at the bottom of the shaft, engaged in pulling loaded coal cars on the cage or elevator to be hoisted, when the coal fell and struck him. He stated that he had spoken to the pit boss who agreed to see the superintendent and have the dumping blocks raised or the defect complained of repaired and that he continued his work only on the promise and expectation that repairs would be made, but knew that it had not been fixed up to the time of the injury.

Many witnesses testified that the dumping blocks were not too low and that it made no difference about their height, so long as they dumped or turned up the cars that were being unloaded.

Some testified that if they were too low the cars were not completely turned and some of the coal remained in, and when the cars were swung back over the shaft, spilled coal down into it.

The testimony shows also that coal frequently fell from the cars in unloading because of the oscillation or shaking of the cars when they came to the top and on account of their being loaded high with coal above the top of the car, that this coal lodged upon the buntons at times and fell down the shaft from the buntons because of the shaking of same, being displaced in unloading cars.

It was undisputed that more or less coal fell down the shaft nearly all the time in unloading and dumping the cars, so much so that the sump had to be cleaned up once a day.

The pit boss denied having made any agreement to repair or raise the dumping blocks and the testimony shows that they had been in use for two or three years at the tipple and several witnesses stated that they were of the kind and class in general use in other coal mines of the locality.

Wm. McKinley stated he had been superintendent of mines for thirty years and was acquainted with the operation of shaft mines and the method used in hoisting coal "that self dumping cages are in general use in such mines that in dumping coal off the cars where such cages

are used, pieces of coal will fall down the shaft and there is no way to prevent it. Some can be prevented by the engineer being careful, but not all." Said that the fact that the dumping blocks were from six to eight inches too low would not cause any greater amount to fall back, and if they were so constructed as to be high enough to dump the coal it would not make any difference as to the height.

Robt. Boyd stated he had had fifty-one years experience in coal mines, had been state mine superintendent and was familiar with shaft coal mines and the method of mining and hoisting coal where the self-dumping system was employed and that this method was in general use by operators in Arkansas in every field in which he had worked. "That coal will fall down in being hoisted and unloading—there is no way to prevent it. It is one of the ordinary things attending hoisting and unloading of coal on self-dumping cages and can not be prevented."

Others testified that they were familiar with the hoisting shaft and self-dumping cages at the mine where the injury occurred and it was constructed as appliances are ordinarily constructed in mines operated by careful and prudent men and such cages are in general use by coal miners throughout the United States.

Hogan said it was impossible to prevent coal falling down the shaft during the operation of such cages. Miners ordinarily load cars above the level of the bed and the motion and shaking of the cage in hoisting as well as the movement in dumping causes pieces of coal to fall off and roll down the shaft. In ordinary operation of cages, coal falls off the cars and lodges on the buntons and then falls down, and that the liability of the cager and persons working at the bottom to be hit was but an ordinary risk of the work.

H. L. Adams testified he had twenty years experience in mines and was familiar with the self-dumping cages used "and that such cages were in ordinary use in well conducted and prudently operated coal mines. They are constructed practically alike; there is no way to pre-

vent coal from falling down the shaft in hoisting or un-
loading coal by this method. It is impossible on account
of the miners loading cars above the bed and the vibration
of the car in hoisting and the tilting of it by a self-dump-
ing apparatus will cause pieces of coal to fall off the car.
He said further, that persons working around the bot-
tom of the shaft knew this and it is one of the dangers
of the work in which they are engaged and that if the
blocks are in such position as the cars will dump, their
being too high or too low has no effect as to the falling of
the coal. If it is entirely too low, the car will not dump
at all.''

The court instructed the jury, refusing to give ap-
pellant's requested instruction numbered 8 as follows:
and gave it as amended, over its objection, by adding
the proviso: ''If the jury believe that the cage used by
defendant at the time plaintiff was injured was a self-
dumping cage, and known by plaintiff to be such, and that
such cages as were then operated by defendant, were in
general use in like coal mines operated by persons of ordi-
nary prudence and caution, and further believe from the
evidence that in the ordinary and usual operation of such
cages coal will fall down the shafts when the cages are
used in the ordinary and usual way, then plaintiff can not
recover if the evidence shows his injuries were caused
by coal which fell down the shaft while coal was being
hoisted and dumped in the usual and ordinary way by
such self-dumping cages. Provided: you believe from
the evidence that the falling of the coal was not caused
by the negligence of defendant.'' From the judgment on
the verdict against it, this appeal is prosecuted by the
coal company.

*Ira D. Oglesby,* for appellant.

1. The evidence does not establish the negligence
alleged in the complaint. If it does, it is conclusively es-
tablished by the uncontradicted testimony that plaintiff is
precluded from recovery upon the doctrine of assumed
risk. The only negligence alleged is that the dumping
blocks were too low, by reason of which lumps of coal

fell down the shaft.   It was properly constructed and in good condition, and such as were in general use.   The happening of the *accident* proves nothing as the doctrine of *res ipsa loquiter* can not be applied.   37 S. E. 683; 94 Mich. 35; 115 S. W. 890; 48 Me. 296; 32 N. W. 240; 43 Mich. 41; 179 U. S. 658; 48 S. E. 508; 25 C. C. A. 247; 47 Minn. 384, etc.

2.   This is a clear case of *assumed risk*.   Plaintiff knew the danger.   226 Fed. 495.

3.   The instructions are conflicting and misleading. 89 Ark. 211; 82 *Id.* 499; 96 *Id.* 206.

4.   It was error to allow witness Gother to testify that "there was something wrong" with the dumping blocks.

*G. O. Patterson*, for appellee.

1.   The dumping blocks were too low and this caused the injury.   Defendant knew of their condition and of the danger and had promised to repair the defect.   This was the *proximate cause* of the injury and this is not a case of *assumed risk*.   The jury found for plaintiff on both questions under proper instructions and no error is shown.   Labatt on Master & Servant, volume 4, § 1572; 48 S. E. 508; Labatt, M. & S., § 1353, p. 9, 3895; 81 N. J. L. 712; 43 Iowa 662; 86 Ark. 516.

2.   The evidence supports the verdict and the law is correctly embodied in the court's charge.

KIRBY, J., (after stating the facts).   It is contended that the court erred in refusing said instruction as requested and in amending same and giving it as amended over appellant's objection.

The testimony is undisputed that the appliances in use at the time of the accident were installed two or three years before and it is not disclosed but that same were and had remained in the position and condition all the time until the date of the injury: that it is the kind of hoisting apparatus in general use in shaft mines and it was not shown by plaintiff to have been improperly constructed.   One of his witnesses testified that the blocks were not high enough it seemed, and that the cage would

hang and coal would drop but he also stated that coal always fell back and had been doing so since the time the mine was opened and that where self-dumping cages were used that coal would fall down the shaft and there was no way to prevent it.

Another witness who testified that the blocks were too low also stated that coal would fall anyway in the unloading of cars and could not be prevented from doing so.

The evidence may be said to be uncontradicted, also that coal was frequently loaded several inches above the bed of the cars and rolled off in the ordinary hoisting of the cars and fell down the shaft or lodged on the buntons and later fell down when shaken off by unloading operations.

Said instruction numbered 8 correctly stated the law and appellant was entitled to have it given to the jury without amendment or modification. It applied the law to the facts of the case in a concrete way and no other instruction covered the point. The refusal to give it was error since it does not appear that prejudice did not result therefrom.

If the jury had found that the injury occurred as recited in the instruction, the defendant was entitled to a verdict and in any event to have the question submitted to the jury without the proviso. The burden of proof was upon the plaintiff to show that the injury occurred because of the negligence of the coal company and the jury might have been misled by this proviso into thinking that the coal company would be liable for the injury even if it occurred as set out in the instruction, unless they found that it was not caused by some other negligence of said company. It may be that the testimony is sufficient to warrant the inference that the injury occurred by coal falling from the self-dumping cages in the unloading of it, because the dumping blocks were too low, which is the only negligence alleged and an injury caused by the falling of the coal because the cars were loaded above the bed or some of the coal that had lodged on the buntons was shaken off, would not have warranted a verdict.

If the apparatus in use was standard equipment in general use in such coal mines as the evidence tended to show and the instruction told the jury, the injury to the appellee by the falling of coal down the shaft in the unloading of it was but an ordinary risk of his employment which he assumed in working as he did at the bottom of the shaft at the sump, knowing that the coal would fall. He necessarily knew the danger from the falling coal, it being obvious to any one of ordinary intelligence, and the testimony shows that he had been injured in the same way a few weeks previous to the injury for which this action was brought, while engaged in his work at the bottom of the shaft.

For the error indicated, the judgment is reversed and the cause remanded for a new trial.