WESTERN COAL & MINING COMPANY *v.* HARRISON.

Opinion delivered January 22, 1917.

MASTER AND SERVANT—INJURY TO SERVANT—PROMISE TO REPAIR.—
Plaintiff, an employee, was injured while working in defendant's coal mine. Plaintiff had notified the pit boss of the defective condition of one of the appliances, and the latter had promised to have it repaired. *Held*, plaintiff had a right to rely, for a reasonable length of time, on the promise to repair, and the court properly submitted to the jury the question of whether a reasonable time for making the repairs had expired.

Appeal from Franklin Circuit Court, Ozark District; *James Cochran*, Judge; affirmed.

*T. B. Pryor*, for appellant.

1. This is the second appeal in this case. On the second trial there was no change in the evidence. 122 Ark. 125. It is undisputed that the apparatus in use was standard equipment in general use and that more or less coal would fall; that appellee knew this, as he had been injured before. There was no way to prevent it. Appellant assumed the risk and the peremptory instruction for defendant should have been given. No negligence of defendant was shown, nor any defect in machinery. 37 S. E. 683; 94 Mich. 35; 115 S. W. 890; 48 Me. 296; 43 Mich. 41; 32 N. W. 240; 179 U. S. 658; 48 S. E. 508; 25 C. C. A. 247; 47 Minn. 384. The doctrine of *res ipsa loquitur* can not be applied.

2. The testimony is not sufficient to sustain the verdict. Plaintiff had long experience at such work and knew the danger. 96 Ark. 206; 126 Fed. 495.

3. The instructions are conflicting and misleading. Those given for plaintiff are erroneous. 89 Ark. 211. The doctrine of a reasonably safe place to work is not involved. The place of work was *reasonably* safe. The complaint relied on a defect in machinery. The instructions made defendant an insurer of safety.

4. A jury can not guess at the cause of injury. 109 Ark. 215; 76 *Id.* 436.

*G. O. Patterson*, for appellee.

1. The evidence does not show that the apparatus was standard equipment in general use; but does show that the dumping blocks were too low and that this defect caused the injury. This was submitted to the jury and they found for plaintiff. This and where the coal came from were questions of fact and the court instructed the jury that the burden was on plaintiff to show that the injury was caused by the defect.

2. The authorities cited by appellant do not apply. Here the evidence shows that the negligence of the company was the cause of the injury. There is no

error in the instructions.   4 Labatt on Master & Servant, § 1603; 48 S. E. 508.

3.   The master, after notice, promised to repair the blocks and had a reasonable time.   4 Labatt M. & S., § 1353; 81 N. J. L. 712; 43 Iowa 662; 40 Ill. App. 644; 86 Ark. 516.

4.   It was defendant's duty to furnish plaintiff a reasonably safe place in which to work, using ordinary care.   The court so instructed the jury.   There is no reversible error.

HART, J.   This is the second appeal in this case. The opinion in the former appeal is in 122 Ark. 125, under the style of *Western Coal & Mining Co.* v. *Harrison.*

Appellant operated a coal mine and appellee was employed by it to load cars of coal on a cage or elevator to be hoisted out of the mine through a shaft.   While engaged in putting a car of coal on the cage, a large lump of coal fell down the shaft on top of the car, and one piece flew off and struck appellee.   He was severely injured and sued appellant to recover damages for his injury.   The court in the opinion on the former appeal, said:   "If the apparatus in use was standard equipment in general use in such coal mines, as the evidence tended to show and the instruction told the jury, the injury to the appellee by the falling of coal down the shaft in the unloading of it was but an ordinary risk of his employment which he assumed in working as he did at the bottom of the shaft at the sump, knowing that the coal would fall.   He necessarily knew the danger from the falling coal, it being obvious to any one of ordinary intelligence, and the testimony shows that he had been injured a few weeks previous to this injury for which this action was brought, while engaged in his work at the bottom of the shaft."

The judgment was reversed because the court refused to give an instruction requested by appellant based upon substantially this statement of the law. Upon a re-trial of the case, the instruction was given

and the jury again returned a verdict for appellee in the sum of $550. The case is here on appeal.

The appellant was injured in the course of his employment. Therefore the burden was on him to show that his injury was caused by the negligence of appellant. It is earnestly insisted by counsel for appellant that there is no evidence from which the jury might reasonably and properly conclude that there was negligence on the part of appellant. Counsel claims that at most, the verdict of the jury could only rest on conjecture, and that the evidence was therefore not legally sufficient to support it. We can not agree with counsel in this contention.

According to the testimony of appellant, self-dumping cars are in general use in coal mines throughout the United States. It is impossible to prevent coal from falling down the shaft during the operation of such cages. Miners ordinarily load cars above the level of the bed of the car, and the motion and shaking of the cage in hoisting as well as the movement in dumping causes pieces of coal to roll off and fall down the shaft. There is no way to prevent this. If the dumping block is in position so that the cars will dump, the position as to their being 8 or ten inches too low will have no effect. In the ordinary operation of cages, pieces of coal fall off the cars and lodge on the buntons and the motion or vibration of the operation of the cages dislodges them and they fall down. The liability of the cager and of the person working at the bottom to be hit with the falling coal can not be prevented, and is one of the ordinary risks of the work.

This evidence, if undisputed, or if believed by the jury, would absolve appellant from liability. The evidence on the part of appellee, which will now be stated, tended to contradict it.

Kelley Harrison was assistant cager and was engaged in the performance of his duties at the time he was injured. The tipple had burned down about a year before appellee was injured. When the new tipple was erected, and the new self-dumping cages were installed,

it was found that the dumping blocks were 8 or 10 inches too low. This made some of the coal lodge on the edge of the chute. When the cage would dump itself, the coal would hang on the edge and when the cage would swing back, it would knock the coal into the shaft. Much more coal would fall back in that way than when the dumping blocks were properly adjusted. Before the new tipple was erected, it had been only necessary to clean up the sump about once every four days. After the new tipple was erected, so much coal fell down the shaft that it was necessary to clean up the sump two or three times a day. Some coal will fall down the shaft, even if the dumping blocks are properly adjusted. This is caused by the vibration of the cage as it is being hoisted up. In such cases the coal that falls is mostly slack. There are also some small pieces. Large lumps of coal will not lodge or catch on the buntons.

Appellee complained to the pit boss about the condition of the cages about a week before the injury. The pit boss promised that he would see about it, meaning that he would have it repaired. One of the servants of the company heard appellee make this complaint. The foreman admitted that the complaint was made to him about the dumping blocks, a short time before the injury. He told the superintendent that there was some complaint about coal falling down and that the dumping blocks were probably too low. The pit boss worked there before the old tipple was destroyed by fire, and did not notice as much coal falling then as when the new tipple was constructed. He admitted that he might have promised to repair the dumping blocks and that there was more coal falling than was usual at the time appellee was hurt. The shaft was 165 feet deep. When one cage goes up, the other comes down. As the cage going up reaches the dumping place at the top, the cage going down settles on the bottom and the coal that falls at this time must fall from the top of the shaft. When a cage is going up, if the car is overloaded, the coal will fall down the shaft to the bottom, but this will happen before you attempt to

put another car in the cage. The descending car had settled on the bottom and appellee had it about half loaded when he was struck by the piece of coal. He had sent up a car and was putting another car on the east cage when a chunk of coal fell down into the shaft, broke on top of the bonnet and struck him on the right breast. He was knocked senseless and was severely injured. The piece of coal which struck appellee was about the size of a man's fist and it was estimated that the large lump which struck the bonnet and broke into pieces was about the size of a man's head.

It is the contention of counsel for appellant that it does not appear from the testimony whether appellee was struck by a piece of coal that jolted off of the cage as it was being hauled up the shaft or whether the piece of coal fell from the top of the shaft as the result of the dumping blocks being too low. Hence he insists that the verdict was the result of surmise or conjecture. This is true according to the evidence adduced by appellant, but we think the evidence adduced by appellee tended to show negligence on the part of appellant. According to the evidence adduced by appellee the descending car would settle on the bottom of the shaft just as the ascending one would reach the top. The cagers knew that coal was likely to be jolted off of the cage while it was being hoisted to the top, and for that reason stood out of the way until the descending cage reached the bottom. Then they would commence to load a car into that cage because they knew there was no further danger of coal falling from the ascending cage, as it had reached the top. Appellee was not injured until he had commenced to load a car into the cage and the jury was justified in finding that he was not injured by coal falling from an ascending cage. Then, too, the evidence of appellee tended to show that the coal which fell from an ascending cage was mostly slack and the rest small lumps of coal, while the lump of coal which fell and caused the injury to appellee was as large as a man's head. The evidence on the part of appellee tended to show that because the dumping

blocks were too low, the coal would lodge on the edge of the chute; and that the cage, as it was drawn back, would knock this coal down the shaft.  For the reason that the injury did not occur until after appellee had begun to load the cage which had reached the bottom of the shaft, the jury was justified in finding the appellee was injured by a lump of coal which had lodged on the edge of the chute and which was knocked down the shaft by the cage as it was drawn back after dumping itself.  So there was evidence legally sufficient to warrant the jury in returning a verdict for appellee.

In the case of *A. L. Clark Lumber Co.* v. *Johns*, 98 Ark. 211, the court held that, where a servant, on discovering a defect in the place in which he was employed to work, notified the master to make repairs, which the master promised to do as soon as the mill shut down, and the servant was injured on the following day, an instruction to the effect that the servant had a right to continue at work in reliance upon the master's promise was not so defective in that it failed to limit the right to rely upon such promise to a reasonable time that the defect could be reached by a general objection.

In the instant case the testimony on the part of the appellant tended to show that the promise to repair, if made, was made two weeks prior to the injury, and the court did not err in submitting to the jury the question of whether or not the time for compliance with the promise had expired.  The pit boss testified that the promise was made a short time before the injury and another witness for appellee testified that he heard the pit boss make the promise a week before the injury.  Appellee had a right to rely for a reasonable length of time on the promise to repair and we do not think under the circumstances that the court erred in submitting to the jury the question of whether or not a reasonable time for making the repairs had expired.

We find no prejudicial error in the record and the judgment will be affirmed.